## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

MELVIN P. BROYLES, JR.,                )
          Plaintiff,                          )
                        )
v.                                                 )          **CIVIL ACTION NO. 1:15-05704**
                        )
CAROLYN. W. COLVIN,                  )
Acting Commissioner of Social Security,  )
          Defendant.                         )

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Orders entered May 6, 2015, and January 5, 2016 (Document Nos. 4 and 15.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 12 and 13.), and Plaintiff's Response. (Document No. 14.)

The Plaintiff, Melvin P. Broyles, Jr. (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on March 5, 2010 (protective filing date), respectively, alleging disability as of February 4, 2010, due to a "6.5 cm mass in his chest that is not yet diagnosed, chronic pain caused by the unidentified growth, shortness of breath caused by the unidentified growth, and difficulty eating and swallowing caused by the growth."[1] (Tr. at 163, 322-25, 326-31,

---

[1] On his form Disability Report - Appeal, undated, Claimant asserted as additional disabling impairments, that he had been diagnosed with non-operable cysts in his lungs and chest, which were non-cancerous, and possible necrotizing granuloma masses. (Tr. at 385.) He also

349, 366.) The claims were denied initially and upon reconsideration. (Tr. at 163, 156-59, 182-84, 187-89, 201-03, 204-06.) On March 18, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 163, 207-09.) A hearing was held on May 17, 2012, before the Honorable Geraldine H. Page. (Tr. at 106-46.) By decision dated June 21, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 163-72.) By Order entered June 8, 2013, the Appeals Council remanded the matter to the ALJ for consideration of new and material evidence that consisted of a treating source opinion from Dr. Andrew Thymius, D.O. (Tr. at 178-81.) Upon remand, the Appeals Council directed the ALJ to (1) update the record with any existing medical evidence; (2) give consideration to the opinion of Dr. Thymius, and if necessary ask the treating source to provide additional evidence or further clarification of the opinion; (3) obtain evidence from a medical expert, if necessary; (4) further evaluate Claimant's subjective complaints and provide rationale; (5) give further consideration to Claimant's RFC; and (6) if warranted, obtain evidence from a VE. (Tr. at 179-80.)

On remand, Claimant submitted additional medical exhibits and updated Agency forms. A supplemental hearing was held on November 19, 2013. (Tr. at 36-85.) By decision dated January 17, 2014, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-29.) The ALJ's decision became the final decision of the Commissioner on April 16, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) Claimant filed the present action seeking judicial review of the administrative decision on May 5, 2015, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has

---

alleged "more severe stabbing pain and shortness of breath," right arm and chest numbness, and right side muscle soreness. (*Id.*)

the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job,

and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, February 4, 2010. (Tr. at 18, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "a subcranial mass compressing the esophagus and containing a fungal infection, necrotizing granuloma, chronic obstructive pulmonary disease (COPD), and arthritic changes in the shoulders and knees" which were severe impairments. (Tr. at 18, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for sedentary work, as follows:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand for four hours, walk for three hours, and sit for six hours in an eight-hour workday, but stand no more than three hours at a time, walk no more than one hour at one time, and sit no more than four hours at a time. He can occasionally push and pull. He can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl. He can frequently handle, feel, finger with the left upper extremity, and reach overhead. He should avoid concentrated exposure to extreme temperatures, excess humidity, pollutants, pulmonary irritants, hazardous machinery, unprotected heights, climbing ladders, ropes, or scaffolds, and vibrating surfaces.

(Tr. at 21, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 27, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE"), taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a callout operator, at the unskilled, sedentary level of exertion. (Tr. at 27-28, Finding No. 10.) On this basis, benefits were denied. (Tr. at 28, Finding No. 11.)

4

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on August 18, 1964, and was 49 years old at the time of the supplemental administrative hearing on November 19, 2013. (Tr. at 27, 42, 170, 322, 326.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 27, 43, 171, 365, 367.) In the past, he worked as a truck driver, general construction laborer, paving machine operator, and road roller operator. (Tr. at 27, 73-74, 170, 368, 374-81.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will

5

summarize it and discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred when she failed to comply with the Appeals Council's Remand Order. (Document No. 12 at 4.) In response, the Commissioner asserts that the ALJ complied with the Appeals Council's Remand Order. (Document No. 13 at 11-12.) The Commissioner asserts that although the new evidence, Dr. Thymius' opinion, justified remand, "it did not, in and of itself, justify a reversal." (Id. at 11.) She notes that on remand, the ALJ complied with the Appeals Council's Order by obtaining updated medical evidence and agency forms, obtained two consultative examinations, held a supplemental hearing, and issued a new decision. (Id.) The Commissioner asserts that Claimant ignores the ALJ's thorough review of all the objective medical evidence and medical source opinions. (Id. at 12.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in giving little weight to the opinion of Dr. Thymius, in that she devoted a one sentence boilerplate statement as to her findings. (Document No. 12 at 5.) Contrary to the Appeals Council's Order, Claimant asserts that the ALJ failed to assess or explain the weight given to Dr. Thymius' opinion. (Id.) Pursuant to the Regulations, Claimant contends that because the ALJ failed to give his opinion controlling weight, she was required to explain the weight assigned. (Id. at 6.) In this instance, the ALJ failed to explain any evidence contradictory to Dr. Thymius' opinion, upon which she relied. (Id.) She contends that the ALJ's explanation as to the weight assigned Dr. Thymius is a "bare boned" explanation. (Id. at 6-7.)

In response, the Commissioner asserts that Dr. Thymius' opinion was not entitled to controlling weight. (Document No. 13 at 14-17.) Contrary to Claimant's allegations, the

Commissioner asserts that the ALJ summarized Dr. Thymius' findings and observations in four separate paragraphs, and therefore, performed more than a "bare-boned" analysis. (Id. at 14.) The ALJ however, determined that Claimant's unremarkable examination findings and normal daily activities undermined Dr. Thymius' opinion. (Id.) Moreover, Claimant responded well to his medications. (Id.) The Commissioner further asserts that Dr. Thymius' opinion was not supported entirely by Drs. Loschner, Faulhaber, and Nutter. (Id.) Dr. Faulhaber's one-time examination revealed only minimal respiratory distress, and Dr. Nutter's examination demonstrated that Claimant's lung fields were clear to auscultation. (Id.) The Commissioner further asserts that the ALJ was not required to accept Claimant's subjective complaints as documented by Dr. Thymius. (Id. at 15.) Accordingly, the Commissioner contends that the ALJ properly gave less weight to Dr. Thymius' opinion because it was not well supported by the objective findings. (Id.)

Claimant next alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in evaluating his subjective complaints. (Document No. 12 at 8-9.) Claimant asserts that the ALJ simply inserted boilerplate language into her decision without considering his subjective complaints. (Id. at 9.) In response, the Commissioner asserts that the ALJ properly found that Claimant was not fully credible. (Document No. 13 at 17-18.) She asserts that although the ALJ found Claimant disabled, she acknowledged his subjective symptoms. (Id. at 18.) She asserts that Claimant did experience subjective symptoms, "but unequivocally asserts that the symptoms were not severe enough to preclude him from performing other work in the national economy prior to January 17, 2014, the date of the Commissioner's final decision in this matter." (Id.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing his RFC. (Document No. 12 at 9-11.) She asserts that

the ALJ failed to incorporate Kelly Robinson's opinion of moderate limitations. (Id. at 10.) He further asserts that the ALJ erred in presenting hypothetical questions to the VE based on Dr. Nutter's assessment. (Id.) Next, he alleges that the ALJ failed to address any limitation on his right side. (Id. at 11.) Finally, Claimant asserts that the ALJ erred in rejecting two of the jobs identified but accepting the third, which was inconsistent with her RFC finding. (Id.)

In response, the Commissioner asserts that the ALJ properly determined that Claimant retained the RFC to perform a range of sedentary work. (Document No. 13 at 12-15.) The Commissioner asserts that as long as there is one occupation in the national economy that Claimant can perform in significant numbers, then the Commissioner met her burden. (Document No. 13 at 19.) Accordingly, the Commissioner contends that substantial evidence supports the ALJ's decision. (Id.)

Analysis.

1. Administrative Errors:

Claimant first alleges that the ALJ erred in failing to follow the Appeals Council's instructions, or that she erred in her attempt to do so. (Document No. 12 at 4.) By Order entered June 8, 2013, the Appeals Council granted Claimant's request for review under the new and material evidence provisions of the Regulations for consideration of a treating source opinion from Dr. Andrew Thymius, D.O. (Tr. at 179-80.) On remand, the Appeals Council instructed the ALJ as follows:

A. Update the record with any existing medical evidence.

B. Give consideration to the treating source opinion of Dr. Thymius which was submitted in connection with the request for review, pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinion and medical source

8

statements about what the claimant can still do despite the impairments (20 CFR 404.1512 and 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.

C.  Further, if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairment (20 CFR 404.1527(f) and 416.926(f) and Social Security Ruling 96-6p).

D.  Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529 and 416.929) and Social Security Ruling 96-7p.

E.  Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).

F.  If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. at 179-80.)

The record demonstrates that the ALJ obtained updated medical evidence and gave further consideration to the opinion of Dr. Thymius. (Tr. at 21-26.) A supplemental hearing was held on November 19, 2013 (Tr. at 36-85.), and the ALJ re-assessed Claimant's pain and credibility. (Tr. at 21-26.) The ALJ also assessed Claimant's RFC and obtained testimony from a vocational expert. (Tr. at 21-26, 73-81.) Accordingly, the undersigned finds that the ALJ complied with the Appeals Council's remand Order.

9

2.  <u>Medical Opinions</u>.

Claimant next alleges that the ALJ erred in giving little weight to Dr. Thymius' opinion. (Document No. 12 at 5-7.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2014). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." <u>Id.</u> §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological

consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2014). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i).

In his decision, the ALJ assigned little weight to Dr. Thymius' opinion because it was inconsistent with his own clinical findings and unsupported by the medical evidence of record. (Tr. at 25.) The ALJ noted that Dr. Thymius' clinical findings, consisting of unremarkable general examinations, normal daily activities, and reports of being functional, that he felt better, and that he was doing well, failed to correlate with the findings of record. (Tr. at 26.)

The record reveals that on November 6, 2012, Dr. Thymius, Claimant's treating physician, acknowledged that Claimant suffered from "necrotizing respiratory granulomatosis which causes chronic thoracic pain and rib pain." (Tr. at 25, 947.) He noted that Claimant had difficulty breathing secondary to pain, had daily pleuritic chest pain, and was treated with opiate medication. (Id.) A fluoroscopic guided intercostal nerve rib block was administered to help alleviate pain, but none of the treatment provided long-lasting pain relief. (Id.) Dr. Thymius therefore, opined that Claimant was "unable to be gainfully employed secondary to pain, which limits his functionality to be in the workforce." (Id.) He further opined in his professional opinion that Claimant suffered from "necrotizing expiratory granulomatosis which causes chronic rib and pleuritic chest pain on a daily basis. He is unable to be gainfully employed secondary to his chronic pain disorder requiring him to be treated with opiate medication." (Id.)

Dr. Thymius' treatment notes reveal that on August 12, 2012, Claimant experienced increased swelling of the left rib cage anteriorly and laterally with decreased left grip strength. (Tr.

at 966.) On March 27, 2013, Dr. Thymius noted on examination of Claimant's chest that he had tenderness to palpation over the left hemithorax posteriorly and anteriorly. (Tr. at 978.) Dr. Thymius' chest examinations in all other respects were unremarkable. (Tr. at 960, 964, 969, 972, 975.)

On December 3, 2012, Claimant was examined by Dr. Anthony L. Loschner, M.D., a specialist, who noted that Claimant's breathing was non-labored and that he was able to complete sentences with ease. (Tr. at 953-58.) He had no chest tenderness and the examination in all other respects was normal. (Tr. at 954-55.) Dr. Loschner noted that Claimant continued to smoke a cigarette every now and then, up to half a pack a day. (Tr. at 953.) He diagnosed PET avid LUL nodule and a left hilar node that appeared to have increased in size since May 2010, which was suggestive of a fungal infection; nicotine dependency; and GOLD stage III COPD. (Tr. at 955.) Dr. Loschner prescribed Spiriva. (Id.)

On December 21, 2012, Dr. James R. Faulhaber, M.D., an infectious disease specialist, diagnosed a LUL mass with granulomas pneumonitis with growth of Candida spp. without direct evidence of invasion. (Tr. at 991-94.) Dr. Faulhaber noted that Claimant appeared in minimal respiratory distress, but was able to complete sentences and not use accessory muscles. (Tr. at 991.) He further observed poor air entry in the upper lung fields bilaterally with the left worse than the right, inspiratory wheezes at the bases, and expiratory wheezes throughout all lung fields. (Id.) Dr. Faulhaber recommended that Claimant not undergo any acute anti-fungal treatment without acquiring additional data. (Tr. at 992.)

On August 15, 2013, Dr. Stephen Nutter, M.D., conducted a consultative examination. (Tr. at 1009-19.) Claimant reported that the 19 granulomas on his lungs interfered with his breathing

12

and caused pain. (Tr. at 1009.) He reported continued breathing problems since 2010, with frequent wheezing and coughing. (Id.) He reported pain in the center and somewhat to the left lower sternal border and left side of the sternum, that was aching and stabbing pain, constant in nature. (Id.) His pain was exacerbated by lifting and bending over. (Id.) Claimant reported that he smoked three cigarettes per day. (Tr. at 1010.) On physical examination, Dr. Nutter observed symmetrical excursion, with lung fields that were clear to auscultation and percussion. (Tr. at 1011.) Dr. Nutter diagnosed shortness of breath with a history of COPD and lung mass, chest pain, chronic thoracic strain, and chronic shoulder pain. (Tr. at 1013.)

Dr. Nutter also completed a form Medical Source Statement of Ability to Do Work-Related Activities (Physical), on which he opined that Claimant was able to lift 20 pounds occasionally and 10 pounds frequently; sit six hours, four uninterrupted; stand four hours, three hours uninterrupted; and walk three hours, one hour uninterrupted. (Tr. at 1014-15.) Dr. Nutter opined that Claimant was able to use both hands continuously, except he could reach overhead with his left hand frequently. (Tr. at 1016.) Claimant could climb, kneel, crouch, and crawl occasionally and balance and stoop frequently. (Tr. at 1017.)

The ALJ summarized the medical and opinion evidence and gave Dr. Nutter's opinion great weight. (Tr. at 24-25.) The undersigned finds that the ALJ failed to provide a proper explanation for giving little weight to Dr. Thymius' opinion. Although Dr. Thymius had some negative clinical findings, the ALJ gave greater weight to the opinion of Dr. Nutter, who found more positive findings than did Dr. Thymius. Thus, there is an unexplained inconsistency in the opinion evidence. Accordingly, the undersigned finds that remand is required for further consideration of the opinion evidence.

3. <u>Pain & Credibility</u>.

Claimant also alleges that the ALJ erred in assessing his pain and credibility. (Document No. 12 at 8-9.) A two-step process is used to evaluate a claimant's statements and to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.   20 C.F.R. §§ 404.1529(b) and 416.929(b) (2014); SSR 96-7p; <u>See also</u>, <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996).   If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.   <u>Craig</u>, 76 F.3d at 595.   When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." <u>Mickles v. Shalala</u>, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. <u>Hyatt v. Sullivan</u>, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations reasonably are consistent with objective medical and other evidence.   20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2014). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.   . . .   Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;

14

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2014).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a

claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in her decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In Hines v. Barnhart, the Fourth Circuit stated that

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d 559, 565 n.3 (citing Craig, 76 F.3d at 595).

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 21-22.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 22.) Thus, the ALJ made an adequate threshold finding and proceeded to consider Claimant's ability to work. (Tr. at 22-26.) At the second step of the analysis, the ALJ concluded that

16

Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 22.)

In assessing Claimant's credibility, the ALJ summarized the medical evidence of record and Claimant's allegations. (Tr. at 22-26.) The ALJ acknowledged Claimant's conditions and treatment. (Id.)  Despite Claimant's continued complaints of shortness of breath and chest pain, the medical evidence demonstrated that he continued to smoke. (Tr. at 23.) The ALJ further acknowledged Claimant's complaints of arm and shoulder arthritis and pain, but found that a bone scan revealed only mild arthritic changes. (Tr. at 24.)   The ALJ noted that Claimant underwent intercostal nerve blocks for his left lung and left shoulder pain. (Id.) The evidence established moderate discomfort on examination by Dr. Thymius in December 2012. (Id.) The ALJ also considered the opinion evidence of record, as discussed above. (Tr. at 24-26.) The ALJ further considered Claimant's daily activities and found that although they are limited due to his impairments, the activities he performed were inconsistent with his allegations and were no more than mildly restricted by his impairments. (Tr. at 25.) The ALJ also acknowledged Claimant's testimony as to the precipitating and aggravating factors, as well as his reported functional limitations. (Tr. at 26.) The ALJ noted that Claimant was responsive to medication and had several essentially normal examinations, despite his continued smoking. (Id.) The ALJ therefore, found that Claimant's subjective symptoms "did not correlate with the objective findings in the medical evidence of record." (Id.)

The undersigned finds that the ALJ properly considered Claimant's subjective complaints of pain and other symptoms pursuant to the Regulations. As the ALJ placed much emphasis on the opinion evidence however, in finding that Claimant was not entirely credible, the undersigned finds that his credibility should be reassessed on remand.

4.  <u>RFC Assessment</u>.

Finally, Claimant asserts that the ALJ erred in assessing his RFC. (Document No. 12 at 9-11.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." <u>See</u>

Social Security Ruling 96-8p, 1996 WL 374184, *1 (July 2, 1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including "the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Id. at *5. The Ruling requires that the ALJ conduct a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Id. at *3. This function-by-function analysis enables the ALJ to determine whether a claimant is capable of performing past relevant work, the appropriate exertional level for the claimant, and whether the claimant is "capable of doing the full range of work contemplated by the exertional level." Id. Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545(a) (2014). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at *7.   The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence in the case record were considered and resolved." Id.

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations

or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." Id. The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. The Fourth Circuit further noted that a *per se* rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." Id. Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (*Citing* Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); see also, Ashby v. Colvin, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

In the instant case, the ALJ found that Claimant did not suffer from any severe mental impairment. (Tr. at 18.) The ALJ acknowledged the report of Kelly Robinson, M.A., a licensed psychologist, who conducted a consultative evaluation, and gave her findings and opinions significant weight at step two because they were internally consistent. (Tr. at 20.) On July 29, 2013, Ms. Robinson diagnosed depressive disorder NOS based on Claimant's symptoms of depressed mood, withdrawal from people, fatigue, low self-esteem, and lack of motivation. (Tr. at 20, 1001.) Ms. Robinson opined that Claimant's social functioning, concentration, persistence, and pace were within normal limits. (Tr. at 20, 1001-02.) Ms. Robinson also completed a form Medical Source Statement of Ability to Do Work-Related Activities (Mental), on which she opined that Claimant was limited moderately in his ability to understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; and respond appropriately to usual work situations and to changes in a routine work setting. (Id.) She assessed mild limitations in Claimant's ability to understand, remember, and

carry out simple instructions; make judgments on simple work-related decisions; and interact appropriately with the public, supervisors, and co-workers. (Id.) In support of her opinions, Ms. Robinson noted that Claimant's judgment was moderately deficient. (Tr. at 20, 1004.) At steps two and three of the sequential analysis, therefore, the ALJ found that Claimant's mental impairments caused no more than mild limitations in his daily activities, social functioning, concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. at 20.)

At the administrative hearing, the ALJ asked the VE a hypothetical question that limited Claimant to simple, repetitive, unskilled tasks, to which the VE responded that Claimant was able to perform work in the regional and national economies. (Tr. at 76-77.) Because Ms. Robinson assessed only mild limitations in mental functioning, the ALJ therefore incorporated her findings and found that Claimant did not have any significant mental limitations. In turn, the ALJ did not assess any mental limitations in her RFC assessment. (Tr. at 21.) The undersigned finds that Ms. Robinson's evaluation and opinion demonstrates that Claimant did not have any significant mental-related functional limitations and therefore, the ALJ did not err in failing to incorporate the few moderately assessed limitations in the hypothetical question posed to the VE or in her RFC assessment.

Claimant also alleges that the ALJ erred in presenting hypothetical questions to the VE based on Dr. Nutter's assessment. (Document No. 12 at 10.) As discussed above, the ALJ gave greater weight to Dr. Nutter's opinion than she did Dr. Thymius' opinion, despite a greater number of positive findings by Dr. Nutter. The undersigned has recommended that this matter be remanded for this reason. Accordingly, the undersigned finds on remand that the ALJ also should reconsider the opinion evidence of record in assessing Claimant's RFC.

Finally, Claimant alleges that the ALJ erred in rejecting two of the jobs identified by the VE, and accepting the third job, which was inconsistent with her RFC finding. (Document No. 12 at 11.) As the Commissioner notes, as long as the ALJ identifies at least one occupation in the national economy in significant numbers that Claimant is able to perform, the Commissioner has met her burden at step five of the sequential analysis. In this case, the ALJ acknowledged that the VE had identified

20

the sedentary position as a callout operator, as well as a cashier II job and ticket seller, which Claimant was capable of performing. (Tr. at 28.) The ALJ however, discounted the cashier and ticket seller jobs because they were inconsistent with the assessed exertional level or handling requirements of the occupations. (Id.) The ALJ therefore, found that Claimant was capable of performing work as a callout operator, which job existed in significant numbers in the regional and national economies. (Id.) Accordingly, the undersigned finds that the ALJ met her burden at step five of the sequential analysis.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), **REVERSE** the final decision of the Commissioner, **REMAND** this matter pursuant to sentence four of 42 U.S.C. 405(g) for further administrative proceedings for further consideration of the opinion evidence and Claimant's RFC, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Senior Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: July 25, 2016.

Omar J. Aboulhosn
United States Magistrate Judge